The next matter number 22-1422 United States v. Jean Carlos Aponte-Colon. At this time, would counsel for the appellant please introduce herself on the record to begin. Good morning, Your Honors, and may it please the court. Jessica Earle from the Public Defender's Office on behalf of Mr. Aponte-Colon. May it please be reserved for three minutes for rebuttal. Amen. Your Honors, the prosecution here was well aware of the nature of Mr. Aponte's offense, his criminal history, and the operation of the guidance. When in the face of all these factors, it agreed to a joint upward variance on the gun count and a guidelines recommendation on the marijuana count. But this agreed-upon variance was not enough. The prosecution, while aware of the disreport it was facing, filed a nearly identical sentencing memorandum that has been employed by the same prosecutorial team to seek higher sentences in this district court. Despite the fact that the district court does not request a sentencing memorandum, it claims it does this out of its solemn obligation to the court. However, a submission of these improper sentencing memorandums, replete with unreliable internet sources that have no connection to the client, Mr. Aponte, constitutes breach. In fact, the memorandum itself hardly ever mentions the count for which Mr. Aponte was convicted of, which is the possession of a firearm for the purpose of marijuana trafficking. The government should not be able to extract benefits from a defendant and then later argue around that bargain by paying lip service to the plea, while simultaneously undercutting the plea agreement by supplying the district court with unreliable materials. This court should reverse and remand for specific proponents. Can I ask you, and it's a question related to a question Judge Hamilton asked in an earlier case, but as I understand your argument on the breach of the plea agreement, your arguments are, many of them are specific to this particular judge and what you view as this particular judge's tendencies in past cases, and I'm just wondering if breach of plea agreement analysis can really be something that's judge-specific. In the government's brief, they argue that there's no authority saying we have to tailor our recommendations to a specific district court judge, and we're not saying that, Your Honors, but what the case law teaches us is you have to have prepared for the probable impact of your advocacy. That's what the First Circuit case law has long established, and here, the probable outcome of the advocacy before the district court is the, by supplying these unreliable materials, it's likely that the court will go up. But I will say, in the past, this isn't the only district court in this particular district that has done this. This kind of sentencing memorandum has been deployed to past district court judges for the same effect. It just so happens right now that this is the only district court in particular that is facing claims before this appellate court. I think you reasonably can anticipate when you're signing the agreement with the government that a reasonable outcome would be a neutral, flat-specific recommendation by the government in a sentencing memorandum before the district court. The government is present in all these hearings, Your Honors, in this district. They're well aware of the trends that are going on in the district. So are you, right? Exactly, Your Honor. So how much value does the government's recommendation even have in front of this judge with these kinds of cases? Laura, it looks like he's got his reasons for using upward variances. A disagreement with, it looks like a Kimbrough disagreement with me with gun sentences. What's the big deal? I understand, and I heard Your Honor's question posed earlier as that effect. The problem that we see in the previous cases Your Honor heard, and particularly Mr. Mujica's case and Mr. Aponte's case, there's always a risk, Your Honor, when we sign a plea agreement for our clients that the district court will not follow up with the agreement. But when you have the government submitting these memorandums that aren't tied to the individual in any way, that is expecting an outcome. There's a risk that the judge will go up regardless, but this is enticing the judge or inducing the judge with these sort of inflammatory murder statistics, homicide statistics to push the judge even further. And we know, Your Honor, particularly Mr. Aponte's case, the district court is reading these memorandums, the government's memorandums, because when we look to the appendix, when we look at the district's court rationale after push by defense counsel after objections to the sentence, the district court quotes verbatim, Your Honor, from the government's sentencing memorandum. So, yes, the judge may have his own thoughts, but you can't read out of the record the fact that the district court certainly relied on the government's sentencing memorandum in Mr. Aponte's case. Counsel, the thing that I think is difficult about this case is there was an agreement for an upward variance. So the government is allowed to advocate for the upward variance, and you're saying they advocated too much here, and it ended up with too much variance. But again, going back to some of the other questions, what is the correct rule that can be created here? How are we supposed to create a rule that says this is too much or this is just right? In a case like this, like I said, it's just different since there's an agreement for an upward variance already. Okay, I think, Your Honor, my answer would be two part to that question. So to the first thing that we're arguing that the government advocated too much, certainly the parties recommended an upward variance here, and we have no issue with the government submitting information about the case for the client that supports the recommended sentence. And in this case, there was an upward variance, ostensibly a charge-target plea. But the government cannot submit irrelevant information, Your Honor, about murder or homicide. The government cannot supply a wrong legal basis about deterrence or community factors when this court's case law, under Flores-Machicote, said it must be tied to the defendant. And then to the second part, the rule. I don't think this court needs to establish a bright-line rule about what the government can or can't say in its sentencing memorandum because the case law in this circuit is clear and long-standing. Government has held to the highest standards of performance, and when they are submitting memorandum, if it is tied to the client and relevant to the Flores-Machicote community factors tied to the defendant, then that could be a reasonable submission, but that is not what we have in Mr. Apote's case. A quick review of the sentencing memorandum filed here mentions the word violence I think something over 30 times, the word murder six times, the word homicide nine. Not once is the drug trafficking or the marijuana count mentioned, except for maybe twice at the beginning when the prosecutor includes the charges he's met with. So this court doesn't need to set a rule for the district courts about exactly what may be included in the sentencing memorandum, particularly in an upper variance case. The government is free to submit what it deems appropriate to justify that variance. The problem in this case and in the prior case is the submission of these unreliable, unvetted sources to push the district court higher. If your honors, I have no more questions. Do you think it's okay to provide statistics from the sub-sentencing commission? If your honors are referring to the recidivism statistics that the government included, we take issue with that, that the recidivism is the same as they applied to Mr. Apote, that because he is now a firearms convict, he's going to recidivate. The sentencing commission— Look, that's way too simple, right? The statistics are looking at a whole population. We can talk about chances. We can talk about statistical likelihoods. Individually, is the district judge prohibited from considering those? No, I don't think the district judge is prohibited from considering the sentencing commission's statistics. Those statistics we do point on in our brief contemplate arrests that don't lead to convictions. Right, and I understand your point that in an individual case, that may not be a reliable way to deal with a violation, but nevertheless, that's a common practice in criminal justice statistics on recidivism, and overall may have significant likelihoods with the populations involved. Yes, your honor. I don't take issue so much with the fact that the government submits sentencing commission statistics, but again, under this court's controlling case law, it must be tied to the defendant, and when we see a 12-page memorandum, there is a couple paragraphs about recidivism— Okay, so how about a 20-page memorandum that goes into more detail? This concerns a case that was argued yesterday, but there's a lot going on in this brief here. Yes. ...on sentencing, and where figures indicated that something like— we've got a murder rate in San Joaquin, Puerto Rico, that's something like four times the national average. Fifty percent or so of the murders are connected to drug trafficking, and the vast majority of those were firearms. If the government lays all those out in every sentencing memorandum, the main case is somebody who's got a drug connection, and you've got that here, why isn't that on the receipt? In Mr. Allende's particular case, your honor, that was not the connection the government made in the sentencing memorandum. That's not on the record before this court. In general— It could happen if it were made in general. If the court—we would request the court remain with specific performance, that the government can only recommend within the guidelines of the agreement. But does it mean that we're very interested in somebody with a better record? Yes, your honor. That is a possibility, of course, on a remand, but again, the court should remain with specific instructions if it's going to remain on the procedural reasonableness of the sentence with specific instructions to the district court as it's in the business court's broad discretion to impose a sentence within the guideline range. Even though—I'm sorry. We do have an agreement to an upward hearing, too. Yes, your honor. I think the specific performance would be 84 months on the 924C count, which again, as I mentioned, is ostensibly a plea to charge bargain, and then a guideline range of 10 to 16 months on the marijuana count. Counsel Knett, can I just bring you back to— you started off, I think, saying the government can't submit irrelevant evidence, can't submit unreliable evidence. I think everybody obviously agrees that unreliable evidence shouldn't be submitted, but whether evidence is relevant or not, I think, can be disputed. So I just want to make sure I understand your argument. Are you suggesting that the government can never submit to the statistics evidence, that that's always irrelevant? No, your honor. That's not what we're arguing, and I think this court's case law is what is much—what is clear. The government—and that is in the justification of the sentence, but we can read that analysis as to the government's submissions. The government can submit community characteristics, but this court has been clear that it must be tied to the individual. And again, if I'm bringing this back to this record, the problem here is that the statistics supplied are irrelevant. Mr. Aponte is not charged with any kind of violence. He has no violence in his past or in his current crime. There's no evidence of use of the firearm. There's certainly no murder or homicide. So in this particular instance, the submission of these materials, we strongly urge the court to consider them to be unreliable, but they're also irrelevant because they're not tied to Mr. Aponte's individual charges that he was eventually convicted of. So you think even accurate background information about the community can't be submitted? I think that's not the record for this court in a future case, perhaps, but that's not a sentencing memorandum we've seen from the government in any of the cases that we've heard this morning or in Mr. Aponte's case. Are you claiming ethnic discrimination in this case? Your Honor, there is an argument citing the Second Circuit's long line of cases, specifically Vasquez-Drew, that they— Are you claiming there's any potential discrimination in this case? No, Your Honor. No. Those cases make clear that there is not any argument on behalf of the defense that the prosecution or the judge has any impedious feelings towards a specific race or ethnicity. It's more that if the impartial passerby were to listen to the sentence and feel that these sentences are being handed out to Puerto Rican men having a tendency for violence, that that would automatically require the court to remand. It's whether the reasonable person observing and listening to this sentencing hearing. We're just looking at overall community statistics that would help explain some of that. Yes, Your Honor, but again, if that's not the record, we don't have the community statistics argument by the court. The judge in this case only made a brief quip about the violence in Puerto Rico. No further discussion about that. Sounds like you want to expose him to hearing longer speech in every sentencing hearing. Your Honor, when the court is imposing these massive upper variances, and they are, in this case, from the guideline range, 50 months. But not that much higher above your recommendation. No, Your Honor, 20 months above our recommendation. But as this court recently held in Colón Cordero, nine months is the length of a pregnancy, a school year, and frankly, Judge, any day in prison is above what we signed for. But yes, the problem here is the justification that goes to our second argument of the upward variance is woefully inadequate. In particular, Your Honor, if you know, I know I'm over time, but the marijuana count, the judge also upward varied. Actually, almost more than he did on the firearm count. And there's not a single mention by the government or by the judge as to why the marijuana count is worthy of such a drastic upward variance. In fact, if I'm not mistaken, it was nine grams of marijuana that were recovered in the car. So, yes, Your Honor, to answer your question most succinctly, we need more justification. This court has been clear time and again that if you're going to go up, you can't just relist the items that were seized or the 35-53 effect as you have explained before. 2.7 kilos. No, no, no, Your Honor. It's 2.7 grams of heroin and nine grams of marijuana. And as the court is aware, Mr. Colón was a long-time drug addict, so he pled to the marijuana count. We do the calculation in the PSR. Both drugs are included. Thank you. Thank you. Thank you, counsel. At this time, counsel for the government, please introduce yourself on the record to begin. Good morning, Your Honors. May it please the court, Julia McGonaghy for the United States. Now, this court should affirm Mr. Colón's sentence as the prosecutor did not breach the plea agreement and the district court imposed a procedurally reasonable sentence. Now, turning to the first claim of error, a question that has been heard many times in the last three cases, what type of rule this court should apply when evaluating a prosecutor's performance pursuant to a plea agreement? And this circuit's precedent has been clear that there is no magic rule or formula. And this makes sense because each case is its own separate world. So what we need to do is look at the plea agreement, the promises contained therein, and do what this court explained back in the 90s in Canada. See if the prosecutor's performance, the overall conduct, was reasonably consistent with making the promised request as to the opposite. And applying that standard in this case, we can conclude that the defendant here did get the benefit of this bargain and the prosecutor did engage in good faith. When we look here at the plea agreement, what the defendant did, he was originally charged with six counts, and he pled guilty to two, and the plea agreement agreed to dismiss the remaining four. The gun count to which he pled guilty, the 924C, has an advisory guideline range of 60 months. Notwithstanding, the parties agreed to a 40% variance, an 84-month recommendation, and then the parties agreed that they would request a sentence within the advisory guideline range of 10 to 16 months consecutive for the drug count. Now, after Mr. Epelman filed his sentencing memorandum, which was focused on his mitigating factors and his drug problem, and he himself acknowledged that, in his view, the 24-month variance was warranted based on the sheer quantity and quality of the evidence seized on the day of his arrest. And if we look what's in the stipulated facts, there's a page that includes not only the type of firearm, the arsenal of ammunition, and the amount of drug paraphernalia. Very little quantities were seen, but there was a digital scale. There was different types of ledgers. There were various cell phones. There was over $1,000 in cash. There was a Colombian peso, which gives the inference that this drug trafficking was more than the couple of grams that were seized that day. So you have the defendant's memorandum, which explains why he believes that 84-month sentence is appropriate. And then the government files its sentencing memorandum for the same purpose, explaining in its view why it believed that 84-month sentence was appropriate. Importantly, the plea agreement did not contain any prohibition on the type of advocacy or what the government would refer to. And when you look at the substance of this plea agreement, Your Honor, I mean, excuse me, not the plea agreement, the sentencing memorandum, on over six times, the government was explicit that we are requesting 84 months here for the gun and 16 months for the drugs. It requested it six different times on page 41, 44, 49, 51, and 52 of the appendix. And what the government was doing was telling the court, in our view, we're taking all the 3553A factors because not only did it discuss the offense conduct, it had five main portions. It discussed the offense conduct. It discussed the defendant's background. It talked about social context, deterrence, and the need to protect the public. So it took all of the 3553A factors and said, Your Honor, to the district court, we've balanced all of this, and in our recommendation, we've already taken into consideration social context. It's a 24-month variance. We've also taken into consideration deterrence. We've taken into consideration the defendant's background. And this is what we find to be the appropriate sentence. So in this case, context is key. When you have two parties agreeing to a 24-month variance, there's no wrongdoing in the government explaining its justification, just as the defendant went to his mitigating factors and explained his justification,  explaining why the defense, in its view, felt that that sentence was appropriate. Let me move you off the breach argument to the review of the sentence and the explanation there. Yes, Your Honor. In a number of cases, we've said that just listing the facts of a case may make it impossible to tell what the court's rationale was for imposing an upward variance, and that, in turn, it would not be an adequate explanation to just list the factors. And so if, for the moment, we take aside the arguments about crime in Puerto Rico and deterrence, the general arguments that happened here, it looks to me like the court really does just list through the facts of the case without further explanation and without further ties to the individual defendant before it. What is your take on that, if you take out those more general arguments? Okay, Your Honor. Our take on that is that the district court, prior to imposing the sentence, first examined the defendant's age, education, and employment. It looked at the history and characteristics, his drug consumption, and, very importantly here, it mentioned the party's recommendations. And we can't take this in the back room, because when you have both parties agreeing that a 24-month variance from a 60-month sentence is appropriate, you have the parties explaining, you have the defense saying that the reason for this variance is because of the sheer amount of evidence that was taken and the quality of evidence. We're talking about three extended magazines drummed in. The defendant himself is explaining that what was seized that day is worthy of a variance, the government is in agreement, and the district court, at the end, said, I agree with you both, but I just think more is needed. So this is where the sentencing is an art and not a science. We have the parties put a qualitative amount of 24 months as appropriate in this specific case, given his criminal history, because obviously in a 924C, the criminal history category doesn't come into play. It's just the mandatory minimum. You have the parties agreeing that a 24 is okay, and here the district court specifically says, I hear your recommendation, but for me it's not enough when I balance all of the 35-53-8 factors. And the court specifically said that it identified factors, and in that case it was the same factors that the defense himself has identified when he talked about what was seized that day, and it puts special emphasis on the types of ammunition and the types of ammunition that are used in NATO military forces. It was very impressed by that, which is not taken into consideration in a 924C. A 924C is just a gun, and here we have an AK-style rifle, no visible serial number, another issue that the court mentioned, with the laundry list of ammunition and drug paraphernalia, the cash, the ledgers, et cetera, et cetera. So let me ask you a different question. I think now I know what you're going to answer this question. Let's say we assume that the court's explanation can be supported for a variance on the firearms charge. What basis is there for finding that the district court's explanation for the upper variance on the marijuana count was sufficient? Your Honor, I would say that it's precisely the quantum of evidence that was seized at the day, too, because when we're looking at the quantum of evidence, and I thought I understood you to say that the recommendation by both parties that this was a sentence above the guideline range, that from that you could infer that the defendant understood this to be a serious case. Yes, Your Honor, but I do want to be clear. Both parties did recommend a guideline sentence. I just do want to clarify that. But when we look at what the court mentioned was precisely what's in the stipulation of facts. And here, there was grand quantities. But then when we take a look to see exactly what was taken, putting the gun and the ammunition aside, when quite frankly they do go together because it's a 924C, we're talking about five ledgers, one brown address book, two pocket knives, three different cell phones, an iPad, a digital scale, one black plastic bag with drug paraphernalia, a rifle bag, a different backpack. Then we talk about more than $1,000 in U.S. currency, 20 Colombian pesos. This is enough for the district court saying that all of this material goes beyond the grand quantity. So the drug trafficking that was at play here goes beyond even the user quantities that we know we have an individual with a drug problem. And that can be clearly inferred from the district court's explanation at the sentencing when he imposed an eight-month variant sentence because the upper end of the guideline was 16 and he imposed 24. So the record provides a plausible basis, and beyond a plausible basis or inference, we have the district court specifically mentioning all of this drug paraphernalia prior to imposing the upwardly variant sentence in the drug account. Counsel, can I ask you to address—this is back to the breach of the plea agreement argument— but to address your opposing counsel's arguments to us about when it is and isn't appropriate for the government to include background community facts in its sentencing memorandum when there's a specific plea agreement. I would be curious for your reactions. Your Honor, considering that the community considerations are part of the 3553A factors and Brotus-Machico as a part of general deterrence, if the case deals with firearms and the government is bringing firearms statistics, that is completely relevant. Now, the government is cognizant that the community characteristics cannot be the tail while wagging the dog. You cannot impose an upwardly variant sentence just because Puerto Rico has a high crime rate. It has to be tied into the defendant's personal history characteristics and the offense conduct here. We have a felon, criminal history category 3, so talking about recidivism is a very real issue. We have a firearm and we have guns and we know that gun violence in Puerto Rico— many published opinions from the circuit to show that it is a special problem and we know that drug use and drug and guns together in Puerto Rico constitute a large part of the violence on the island. So to say it's irrelevant is not true. To focus on it solely is where the problem comes into play. But that's not what happened in this case because even the defendant himself, without even taking into consideration any of the community characteristics, is telling the district court a 24-month variance is appropriate. So having the government say, we agree a 24-month variance is appropriate and we've also taken into consideration this, something that we know comes up frequently, is not taking away with one hand what we're giving with the other. It's telling the judge it's already baked in, it's factored into our recommendation so that we're fulfilling our duties pursuant to the plea agreement, not doing anything to the contrary. And I just would like to point out how this conduct is vastly different from the three main breach cases that are cited throughout. We have Clark, Canada, and I believe it's pronounced Gomsky, excuse me if I said that wrong, where we have breaches and those breaches have been in Clark where a sentence in memorandum says you cannot oppose acceptance of responsibility and at the sentencing hearing the prosecutor did it. So that's giving with one hand, taking away from the other. In Canada, they were supposed to recommend a 30-month sentence. They didn't affirmatively do that. They emphasized a supervisory role. They were begrudging in their sentencing recommendation, lamenting that it did not happen here. We have the sentence in memorandum. We have the objection. And then at the hearing, the government didn't mention any of these community factors. It just again talked about the evidence seized and again recommended the 84 months for the firearm and the 16 months for the drugs. And then you have the Gomsky case where they were supposed to recommend a low-end sentence and there was this zealous advocacy that culminated with giving the defendant his just deserves and at a minimum the guideline sentence when he was supposed to recommend a low-end sentence. Very different a situation if there's a joint recommendation for a low-end sentence and the government continues to talk about aggravating factors which could be interpreted to call into question what's the government's true motive here. But here's a situation where we have both parties agreeing to a substantial upward variance so that the government's justification of that is not taking away the benefit gained with this plea agreement. Counsel, if I'm remembering correctly, Mr. Aponte Gomes was originally charged with machine gun Yes, Your Honor. possession of machine gun permits. Did this turn out not to be a machine gun? Your Honor, to be honest, I do not have this information at that time. I do know, I looked through the record and I do know that the machine gun report was provided in discovery. I do not want to say something that I'm not sure of. Okay. We don't know, we don't know. It seems like a very elementary fact. We have clearly in this record, and I'll ask the defense counsel as well. Yes, Your Honor. If there are no further questions, the government rests on its grief and requests that this court affirm Mr. Aponte's conviction. Thank you, counsel. At this time, counsel for the appellant, please reintroduce herself on the record. She is a three-minute rebuttal. Good morning again, Your Honor. It's Jessica, on behalf of Mr. Aponte. I'd like to briefly address the breach in just a quick point and then I'd like to focus more on the procedural reasonableness. Your Honor, the government talked a lot about including a photo and things like that. But again, I point to the fact that we don't take issue with the photo being presented in this sentencing memorandum. In fact, the defense itself also submitted a photo of the drug seized in its sentencing memorandum. The issue is the citation of all murder-static statistics and homicides and violent crime without tying that to Mr. Aponte. And that part of our argument was not addressed by the government in its argument. Additionally, there is no magic rule. The court has been clear about that as far as how a government is supposed to comply with the agreement. But what is clear in the circuit's case law is the impartial observer test. And whether anyone knowing this district and the trends here would be looking at this sentencing memorandum and thinking that this wasn't the government, again, as we've argued, inducing the court to go even higher. As to the procedural reasonableness... Your Honor, did I ask you to answer my question at the moment? Is this a machine gun or not? Your Honor, I was the trial counsel in this case. I do understand that the machine gun report was provided, but I'm not comfortable providing the report. I'm sure not going to review it myself. I do know that nowhere in the PSR is it included as a machine gun, and nowhere on the record is it included as a machine gun. Oftentimes, Your Honor, in the case, even if it is a machine gun, that information will be provided in the pre-sentence report, even if the defendant doesn't use that charge. Your Honor, as to the procedural reasonableness, I'd really like to bring up two quick points. First, the court has been clear in Flores v. Nader and recently in Reyes v. Correa, the judge doesn't have to justify the variance higher than the party's recommended variance. The judge has to justify his variance from the guidelines. The guidelines here were 70 to 76 months. So this court has been clear that while the judge doesn't have to say exactly why he disagrees with the party's variance, the judge has to indicate why his variance, or give some indication so a reviewing court can understand why his variance was the appropriate sentence in this case, and this record is devoid of that information. I would respectfully turn the court's attention to Munoz-Fontanez for this court. It's almost an identical sentencing transcript. In fact, I believe Mr. Munoz's facts are more quite serious. He had five firearms, multiples of which were machine guns, over 800 bullets, photos in his cell phone of dead bodies that corresponded to suspected murders in the area where he was from. This same district court reviewed those and just read all those facts, and the reviewing court said that while that may be true, the district court did not tie that to why he considered each of those facts to go up. It's an almost identical transcript in Mr. Aponte's case, relisting the items seized without more. And one final point, Your Honor. The government here has asked the court to look at the drug trafficking and all the things that were recovered as the court made some sort of inference that there was more drug trafficking. That is not the record before this court. The court made no statements to that effect, and the government cannot save the district court below by inserting that justification in the record now. So we would respectfully ask the court to make the sentence and demand that the specific instructions are included in our briefs. Thank you. Thank you, counsel. That concludes argument in this case.